## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## (SOUTHERN DIVISION)

| | |
|---|---|
| DAVID PHILLIPS AND and DIANE BROWNING, individually and on behalf of the class of persons described herein, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: CV-2016 ) |
| HOBBY LOBBY STORES, INC., | ) ) |
| Defendant. | ) |

_____

### CLASS ACTION COMPLAINT
_____

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to its diversity jurisdiction. 28 U.S.C. §1332. There is complete diversity between Plaintiffs and all defendants in the action. The Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There is diversity between class members and Defendant, and the amount in controversy exceeds $5,000,000.00.

2. Venue is proper in this Court under 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

**PARTIES**

3. David Phillips is a resident of Shelby County, and is over the age of nineteen (19) years.

4. Diane Browning is a resident of Walker County, Alabama and is over the age of nineteen (19) years.

5. Hobby Lobby Stores, Inc. ("Hobby Lobby") is an Oklahoma Corporation, organized under the laws of the State of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma.

**FACTS**

6. On April 2, 2016, Ms. Browning was shopping at Hobby Lobby for craft items, and decided that she would consider buying a chest of drawers.

7. Ms. Browning was told by another customer at the store that she could get 40% off of the purchase price by downloading a coupon onto her phone.

8. Ms. Browning did download the coupon, which stated that she would get 40% off of "one item at regular price only."

9. The small chest was marked as "Always 30% off," at a price of $202.99. Because the item was marked as "Always" 30% off," Ms. Browning thought that she would get 40% off of that price, for a final price of $121.80.

10. Ms. Browning did not receive a price of $121.80 at the register when she went to check out. Instead, the 40% discount was taken off of a "Regular" price of $289.99, making the price paid by Ms. Browning $173.99.

11. The "Regular" price was on the item. However, Hobby Lobby's own information shows that this price is anything but "Regular." The ticket said "Furniture always 30% off." Simply put, the "Regular" price is the price at which an item is "regularly" sold. In this case, $202.99, **not** an artificial price that does not correspond to any sale of the item made by Hobby Lobby.

12. The above-referenced scheme is not unique to this particular item. Rather, many items are "always" on sale, but coupon discounts are taken from a price the item never sells at, which is most definitely **not** the regular price referenced in the coupon. Moreover, this scenario plays out, not only for 40% off coupons downloaded onto smart phones, but also for 40% off coupons printed from Hobby Lobby's website, and brought into the store. The operational language is identical.

13. Mr. Phillips was also affected by this scheme. On October 23, 2015, Mr. Phillips made a purchase of a museum glass at the Doug Baker Boulevard Hobby Lobby location in Shelby County, Alabama. He used the same 40% off coupon that Ms. Browning did.

14. The museum glass that Mr. Phillips purchased was marked "Always 30% off," and the museum glass indeed, was never sold for a price other than $91.00.

15. However, instead of getting 40% off of the $91.00 price, for a total of $54.60, Mr. Phillips was "given" 40% off of a largely fictional price of $130.00, and paid $78.00.

16. Hobby Lobby cannot claim that it does not know that advertising "permanent" or "never ending" sales is not misleading. In 2014, it agreed to pay civil penalties in an action brought by the State of New York's Attorney General over "never ending" sales.

17. Hobby Lobby operates approximately 600 locations in thirty-five (35) states. The policies regarding the items permanently on sale, and the 40% off coupons relating to never actually used prices emanate from Hobby Lobby's Oklahoma City, Oklahoma corporate offices. These policies, referenced above, are uniform throughout the country, and apply to all stores.

## CLASS ALLEGATIONS

18. Plaintiffs bring this case as a nationwide class action pursuant to Fed.R.Civ.P. 23, on behalf of the class described below. Also, this case is brought in conformity with the 11th Circuit's opinion in Lisk v. Lumber One Wood Preserving, 792 F.3d 1331 (11th Cir. 2015), which held that Rule 23 class actions are maintainable

for substantive claims under a statute modeled after the Uniform Deceptive Trade Practices Act such as Oklahoma's.

19.     Class Definition:  Pursuant to Fed.R.Civ.P. 23(b)(1), (2) and (3), Plaintiffs brings this action on behalf of themselves and all others similarly situated, as members of the proposed Plaintiff Class.  The proposed Plaintiff Class is defined as follows:

> All persons in the United States within applicable statute of limitations period who purchased goods with a coupon at a Hobby Lobby location in the United States that were marked as "on sale" but where a price higher than the "sale" price was never charged for the goods, and the discount was taken off of an illusory, irrelevant price.

20.     Ms. Browning and Mr. Phillips are Alabama residents. However, Hobby Lobby enacted the policies at issue in Oklahoma.  Because in the course of its business, in Oklahoma, Hobby Lobby engages in practices constituting advertisement with reason to know that it will not sell the products at 40% off of the regular price, and issues advertising emanating from Oklahoma that is knowingly false concerning the reason for, and amount of a price reduction, Hobby Lobby has liability to plaintiffs and the class under the Oklahoma Deceptive Trade Practices Act, Okl. Stat. 15 §§ 753(8), (11), and Okl. Stat. 15 § 761.1.

21.     Numerosity: The members of the Class are so numerous that their individual joinder would be impracticable in that: (a) the Class includes at least dozens

of individual members; (b) the precise number of Class members and their identities are unknown to Plaintiffs, but are well known to Hobby Lobby, and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the at last hundreds of individual Class members to be individually represented in separate actions; and (d) the relatively small amount of damages suffered by some of the Class members does not make it economically feasible for those Class members to file an individual action to protect their rights.

22. <u>Commonality/Predominance</u>: Common questions of law and fact predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether Hobby Lobby's practices violated the Deceptive Trade Practices Acts sued upon.

    b.    Whether Hobby Lobby took coupon discounts which were supposed to be taken off of regular prices, off of prices that were never used but were simply marked on items as a never used "regular" price.

    c.    Whether Plaintiffs are entitled to damages under the Deceptive Trade Practices Acts sued under.

23. <u>Typicality</u>: Plaintiffs are typical of the claims of the Class members. Plaintiffs and all Class members have been injured by the same wrongful practices engaged in by Hobby Lobby. Plaintiffs' claims arise from the same practices and

course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

24. <u>Adequacy</u>: Plaintiffs will fully and adequately assert and protect the interests of the Class. Plaintiffs retained counsel who is experienced in class actions and complex mass tort litigation. Neither Plaintiffs nor their counsel have interests contrary to or conflicting with the interests of the Class.

25. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the class is in the millions of dollars, the individual damages suffered by each of the Class members as a result of the wrongful conduct by Hobby Lobby are too small to warrant the expense of individual lawsuits. Even if the individual damages were sufficient to warrant individual lawsuits, the court system would be unreasonably burdened by the number of cases that would be filed.

26. Plaintiff does not anticipate any difficulties in the management of this litigation.

## COUNT I

## (Claims Under the Oklahoma Deceptive Trade Practices Act)

27. Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 26 above.

28. The Oklahoma Deceptive Trade Practices Act, Okl. Stat. 15 § 751 *et seq.* sets forth certain actions that are considered to be deceptive, and the remedies for violating those provisions.

29. Okla. Stat. 15 § 751(8) states that it is unlawful to "advertise knowingly, or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised."

30. Okla. Stat. 15 § 751(11) states that it is unlawful to mak[e] a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions.

31. The Oklahoma Deceptive Trade Practices Act provides for a civil action on behalf of the "aggrieved consumer for the payment of actual damages sustained by tthe customer ..." Okl. Stat. 15 § 761.1.A.

32. Ms. Browning should have gotten forty percent (40%) off of the "Always" price, because that **is** the regular price of the goods. As such, she has

been injured in the amount of $52.19.  Similarly, Mr. Phillips should have gotten 40% off of the "Always" price. He has been injured in the amount of $23.40.

33.     It is not just the items that Ms. Browning and Mr. Phillips purchased that employ this scheme.  Hobby Lobby employs the "coupon" and "permanent sale" schemes on many items, and has throughout the class period. Exactly which items have been sold in this fashion are readily ascertainable from Hobby Lobby's records.

34.     As stated above, Hobby Lobby is well aware that this practice violates the Oklahoma Deceptive Trade Practices Act because it has been the subject of an action by the New York State Attorney General, based upon an almost identical Deceptive Trade Practices Act, for the same practices.

WHEREFORE, Plaintiff, on behalf of herself, and the class described above, demands damages in an amount to be determined by struck jury, plus costs, and a reasonable attorneys' fee.

## COUNT II

### (Breach of Contract)

35.     Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 34 above.

36. Plaintiffs and members entered into contracts with Hobby Lobby when they manifested their acceptance of Hobby Lobby's offer by presenting goods at the Hobby Lobby registers, along with their 40% off coupons.

37. Hobby Lobby breached their contract by charging Plaintiffs and the Class a discount off of another, irrelevant, price, as opposed to the regular price of the item.

38. Plaintiffs and the Class have been damaged in an amount calculated as the difference between the price they paid, and 40% off of the price items were regularly, or "always" sold at.

WHEREFORE, Plaintiffs and the Class demand damages in an amount to be determined by struck jury.

## COUNT III

### (Injunctive Relief)

39. Plaintiffs incorporate by reference, as if set forth fully herein, paragraphs 1 through 38 above.

40. The violations of the Oklahoma Deceptive Trade Practices Act are the subject of injunctive relief because the conduct is not only capable of being repeated, but will continue unless Hobby Lobby is enjoined from continuing these practices. As such, monetary relief alone is inadequate.

WHEREFORE, Plaintiffs, on behalf of the Class, request that Hobby Lobby be enjoined from calculating coupon discounts that state they are "good for items at regular price," based on prices that are never actually charged.

## PLAINTIFFS DEMAND TRIAL BY STRUCK JURY ON ALL ISSUES SO TRIABLE.

Respectfully Submitted,

*/s/ Brian M. Clark*
Brian M. Clark

OF COUNSEL:
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
Telephone: (205) 314-0530

Allan L. Armstrong
Armstrong Law Center, LLC
The Berry Building
2820 Columbiana Road
Vestavia Hills, Alabama 35216

Darrell Cartwright
Cartwright Law Center
P.O. Box 383204
Birmingham, AL 35238

**Please serve Defendant by Registered Mail:**

**Registered Agent:** **CSC Lawyers Incorporating Service**
**150 S. Perry Street**
**Montgomery, Alabama 36104**