FILED

2019 Sep-30  AM 10:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID PHILLIPS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-00837-JEO |
| | ) | |
| HOBBY LOBBY STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| STEVEN D. MARCRUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-01645-JEO |
| | ) | |
| HOBBY LOBBY STORES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Currently before the court is the motion to deny class certification of the

Estate of Diane Browning ("the Estate") with respect to the remaining claim

against Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") alleging violations

of the Alabama Deceptive Trade Practices Act ("ADTPA").  (Doc. 103).[1]  The

---

[1] Citations to "Doc. __" is the to the document number of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of the Court.  Because this is a consolidated case, the court refers to the document numbers in the lead filed case, 2:16-cv-0837-JEO, as all the documents filed in the other case are also filed in the lead case.  (*See* doc. 83).  Unless otherwise noted, pinpoint citations are to the page of the

motion also asks the court to strike the class allegations relating to that claim. (*Id*.).  The motion is fully briefed, (docs. 104, 108, 109, 113), and ripe for decision. For the reasons that follow, the motion is due to be denied.

## I.  RELEVANT BACKGROUND

This matter consists of two consolidated putative class actions complaints asserting claims for damages arising from the manner in which Hobby Lobby applied a coupon offering "40% Off One Item at Regular Price."  Plaintiffs contend that Hobby Lobby's practice of taking the coupon discount off the higher "marked price," as opposed to the "Always 30% Off" price, constitutes a breach of contract, as well as violations of various state consumer protection laws.

The first action was originally filed by David Phillips and Diane Browning[2] against Hobby Lobby in this court[3] and alleged a national class action based on breach of contract.  (Doc. 1 ¶ 19).  Plaintiffs amended their complaint multiple times, added new claims and additional plaintiffs, and the complaint currently before the court is the fourth amended complaint.  (Doc. 49).  The fourth amended complaint alleges a national breach of contract class, as well as subclasses under

_____

electronically filed document in the court's CM/ECF system, which may not correspond to pagination of the original "hard copy" of the document presented for filing.

[2] Diane Browning died after filing this lawsuit.  Mrs. Browning's husband, Robin Browning, was appointed executor of her estate.  In that capacity, Robin Browning has been substituted as plaintiff.  (Docs. 40 & 42).

[3] The parties consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (Doc. 16).

ADTPA, the Illinois Consumer Fraud and Deceptive Trade Practices Act, and the Georgia Fair Business Practices and Uniform Deception Trade Practices Act. (*Id.*).

The court dismissed Plaintiff Phillips, one of the Alabama Plaintiffs, and the Georgia Plaintiff, after the filing of a joint stipulation of dismissal. (Docs. 62, 63). Additionally, the court granted summary judgment on the breach of contract claims, as well as the claims brought under Illinois law and the Estate's claim for injunctive relief under ADTPA. (Docs. 78, 79). The only claim that remains in the first action is the Estate's claim for statutory relief under ADTPA. (*Id.*). Specifically, the Estate contends that the way in which Hobby Lobby applies its coupon violates Alabama Code § 8-19-5(11) because it is deceptive to claim the "Always" price is a reduction from another price that is never charged to a customer. The fourth amended complaint also contains class allegations related to this claim. (Doc. 49).

The second action was originally filed in the United States District Court for the Northern District of Florida by Plaintiff Steven Marcrum and alleges class claims for breach of contract, unjust enrichment and violations of the Florida Unfair and Deceptive Trade Practices Act. (*See* Doc. 82 ¶¶ 1, 4, 5). Upon the joint request of the parties, the Florida District Court transferred the case to the Northern District of Alabama and it was randomly assigned to United States District Judge Madeline Hughes Haikala. (*See* Doc. 11 in 2:18-cv-01645). Thereafter, the parties

filed a joint motion to consolidate the two cases[4] which was granted.  (Docs. 82, 83).   After consolidation, Marcrum amended his complaint "clarify[ying] the claims and class definition."  (Docs. 90, 94).

The motion currently pending before the court addresses only the putative class action brought by the Estate under ADTPA.  (*See* Doc. 103).  It does not address any claims in the second action.

## II.  DISCUSSION

Hobby Lobby makes two separate and alternative arguments in support of its motion.  First, Hobby Lobby contends that ADTPA "expressly forbids private parties to bring class actions."  (Doc. 104 at 1).  Second, and in the alternative, Hobby Lobby argues that "class actions are entirely incompatible with the notice and cure requirements of" ADPTA.  (*Id*.).  The court addresses each argument in turn.

### A.  Private Party Class Actions under ADTPA

Hobby Lobby contends that ADPTA explicitly prohibits class actions to enforce its terms.  Indeed, the express language of the statute clearly proscribes the use of class actions to enforce the substantive rights therein:

> A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class. The limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a

---

[4] The parties also consented to the jurisdiction of the undersigned for the consolidated case. (Doc. 82).

violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter.

Ala. Code. § 8-19-10(f).   Plaintiff does not contest the meaning of the statutory provision, but instead argues that it is a procedural limitation that is preempted by Federal Rule of Civil Procedure 23 based on the Supreme Court's decision in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 406 (2010) and the Eleventh Circuit's decision in *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015).   (Doc. 108 at 4-19).

To fully understand the arguments of the parties, the court must first address the history of the statute with regard to class actions and the applicable case law. Thereafter, the court can address the issue presented by Hobby Lobby's motion.

### 1.  Exactment of ADTPA

In 1981, the Alabama Legislature enacted the ADTPA. *See* Ala. Code § 8-19-1, *et seq*.  The statute provided for a private right of action, Ala. Code § 8-19-10(a), but did not allow private plaintiffs to bring a class action:

> (f) A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class; provided, however, that the office of the Attorney General or district attorney shall have the authority to bring action in a representative capacity on behalf of any named person or persons . . . .

Ala. Code § 8-19-10(f) (1981).   The Alabama Supreme Court has interpreted ADTPA as written – as a class action prohibition.  *See Ex parte Exxon Corp*., 725 So. 2d 930, 933 (Ala. 1998).

## 2.  ADTPA and Federal Rule of Civil Procedure 23

Although the provision of ADTPA banning class actions in Alabama courts is explicit, its application in federal courts is not so clear.  Federal Rule of Civil Procedure 23 sets out the procedures for pursuing a class action in federal court and "unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met."  *Shady Grove Orthopedic Assoc., P.A.*, 559 U.S. at 406 (emphasis in original).

In *Shady Grove*, the Supreme Court reviewed the dismissal of a putative class action based on a New York law prohibiting cases from proceeding as class actions if they sought to recover a penalty or statutory minimum damages.  *Shady Grove*, 559 U.S. at 397.  In deciding whether New York law or Federal Rule of Civil Procedure 23 applied, the Court reiterated the "familiar" two-step framework that applies when a federal rule and a state law both seemingly govern. *Id*. at 398. First, the court must determine whether the federal rule directly conflicts with the state law.  *Id*.  A direct conflict between a federal rule and state law exists if the federal rule "answers the question in dispute," *id*. at 397-98, or put differently, if it is "sufficiently broad to control the issue before the Court."  *Id*. at 421.  If there is a direct conflict, the federal rule applies as long as it represents a valid exercise of Congress's rulemaking authority under the Rules Enabling Act.  *Id*.  A federal rule

runs afoul of the Rules Enabling Act if it "abridge[s], enlarge[s], or modif[ies] any

substantive right."  28 U.S.C. § 2072(b).

A majority of the Court found that the class action bar conflicted with

Federal Rule of Civil Procedure 23, concluded that Rule 23 creates a "categorical

rule" as to when plaintiffs may maintain a class action, and found that the New

York law "cannot apply in a diversity suit unless Rule 23 is ultra vires." *Id*. at 399.

Although the Court held that Rule 23 was validly enacted and, therefore,

preempted the New York law in the putative class action challenged in that case,

no majority formed around a reasoning for that outcome.  Writing for three other

justices, Justice Scalia concluded that Rule 23's regulation is purely procedural in

nature and does not impermissibly "abridge, enlarge, or modify any substantive

right" created by state law.  *Id*. at 407.  On that basis, the plurality concluded that

Rule 23 *always* preempts conflicting state laws like the New York law regardless

of "the substantive nature of [the conflicting state] law, or its substantive purpose,"

*id*. at 409, and reasoned that the validity of any Federal Rule of Civil Procedure

depends "entirely upon whether [the challenged Federal Rule] regulates

procedure," *id*. at 410.

In contrast, Justice Ginsburg, writing for the four dissenting members of the

Court, argued that there was no conflict between the New York law and Rule 23.

The dissenters looked at the nature of the state rule to be displaced, examined the

history and function of the New York law and concluded that it was adopted for the non-procedural purpose of limiting remedies. *Id*. at 445-451 (Ginsburg, J., dissenting).   Because Rule 23 "governs purely procedural aspects of class litigation," the dissenters concluded that the rule presented no conflict with New York law's purpose of "control[ling] the size of a monetary award a class plaintiff may pursue." *Id*. at 446-47.

Justice Stevens provided the deciding vote. Writing only for himself and concurring with the judgment, he agreed with the plurality that Rule 23 and the New York law stood in conflict and concluded that the federal rule preempted the state's class action bar.   *Id*. at 416-36 (Stevens, J., concurring in part and concurring in the judgment). With respect to the second of these conclusions, however, Justice Stevens rejected the purely procedural test espoused by the plurality.  *Id*. at 424-28. Instead, he adopted an approach similar to that urged by the dissenters. Justice Stevens focused on whether the state law had a substantive purpose, acknowledged the possibility that state rules that are otherwise procedural "may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy," and concluded that such rules should not be preempted by a conflicting federal rule. *Id*. at 420.  Under his view, Justice Stevens concluded that the determination of whether a state rule is supplanted by a federal rule depends not on "whether the state law at issue takes

the *form* of what is traditionally described as substantive or procedural," but rather on "whether the state law actually is part of a State's framework of substantive rights or remedies." *Id*. at 419 (emphasis in original). While Justice Stevens concluded that the New York law did not present such a case, he cautioned that even genuinely procedural Federal Rules of Civil Procedure would need to give way when they conflict with "seemingly procedural [state] rules that are intimately bound up in the scope of a substantive right or remedy." *Id*. at 433.

The Eleventh Circuit applied *Shady Grove* to ADPTA's ban on class actions in *Lisk* and held that Federal Rule of Civil Procedure 23 trumped the prohibition on private class actions under the ADTPA. 792 F.3d at 1336. Specifically, the *Lisk* court determined that ADTPA's bar on consumers bringing class actions (and the limitation that only the Attorney General or a district attorney may do so) implicated neither substantive rights nor substantive obligations.[5] *Id*. at 1337. In the view of the Eleventh Circuit, it did not matter whether the plurality opinion or the concurring opinion in *Shady Grove* was controlling, *see id*. at 1335, 1336, because "all five justices agreed that applying Rule 23 to allow a class action for a statutory penalty created by New York law did not abridge, enlarge, or modify a

---

[5] The *Lisk* court reasoned that the seller's "substantive obligation was to comply with the ADTPA – to make only accurate representations about its product." *Lisk*, 792 F.3d at 1337. And the buyer's "substantive right . . . was to obtain wood that complied with Lumber One's representations. These are the 'rules of decision' that will govern the ADTPA claim." *Id*. The *Lisk* court went on to explain that "Rule 23 alters these substantive rights and obligations not a whit; with or without Rule 23, the parties have the same substantive rights and responsibilities." *Id*.

substantive right," and "[t]here is no relevant, meaningful distinction" between the

New York law in *Shady Grove* and the ADTPA, *id*. at 1335. The Eleventh Circuit

supported that conclusion by addressing the major points of the plurality's

analysis, as well as Justice Stevens's analysis (e.g., the legislative history of the

ADTPA; the placement of the prohibition on class actions within the code; the

scope of the prohibition; and the rights and obligations of the parties under the

ADPTA, the available remedies, and the rules of decision for enforcing either).

*See id.* at 1336.  In doing so, the *Lisk* court specifically rejected the suggestion that

inclusion of the class action limitation in the statute to be enforced - as opposed to

the "pan-statutory" bar in the New York law - affected the analysis, concluding

that "the question of whether a federal rule abridges, enlarges, or modifies a

substantive right turns on matters of substance - not on the placement of a statute

within a state code." *Id*. at 1336.  Under either the plurality or the concurrence's

analysis, the Eleventh Circuit concluded Rule 23 was valid. *See id.* at 1336, 1337.

Thus, the Eleventh Circuit held "[t]he Alabama statute restricting class actions, like

the New York statute at issue in *Shady Grove*, does not apply in federal court.

Rule 23 controls."  *Id*. at 1336.[6]

---

[6] The court notes that *Lisk* has not been widely followed outside of the Eleventh Circuit, with most courts outside of the circuit implicitly or explicitly disagreeing with its interpretation of *Shady Grove* and the determination that there was no "meaningful distinction" between the New York law and the Alabama class action bar. *See In re Lipitor Antitrust Litigation*, 336 F. Supp. 3d 395, 416-17 (D.N.J. 2018); *Fejzulai v. Sam's West, Inc*., 205 F. Supp. 3d 723, 728-29 (D.S.C. 2016); *Delgado v. Ocwen Loan Servicing*, LLC, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9,

### 3.  Amendment to ADTPA

After the Eleventh Circuit's opinion in *Lisk*, the Alabama Legislature amended ADTPA.  *See* 2016 Ala. Laws 1096.  The amendment revised Alabama Code § 8-19-10(f) as follows:

> (f) A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class. The limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter.

*Id*.  Additionally, the language allowing the Attorney General or a district attorney to proceed in a representative capacity was moved to subpart (g).  Ala. Code § 8-19-10(g).  The new language makes clear that only those officers have the "right and authority to bring action[s] in a representative capacity on behalf of any named person or persons."  *Id*.  Notably, however, the Legislature did not amend the section creating a cause of action for consumers damaged by violations of the Act, Ala. Code § 8-19-10(a), and proscribing damages for affected consumers, nor did it make any amendment to the substantive practices outlined as deceptive under Ala. Code. § 8-19-5, including the particular deceptive trade practice at issue in this case, § 8-19-5(11).

---

2017); *Chapman v. Priceline Grp., Inc.,* 2017 WL 4366716, at *7 (D. Conn. Sept. 30, 2017); *Helpling v. Rheem Mfg. Co*., 2016 WL 1222264, at *13-14 (N.D. Ga. Mar. 26, 2016); *but see Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 263-64 (S.D. Ill. 2015).  This court, however, is bound to follow *Lisk*.

## 4. Does the Amendment Render *Lisk* Obsolete?

With that history, the court can address the heart of the matter: is *Lisk* still good law after the amendment to ADPTA?  Hobby Lobby argues that it is not and that the Alabama Legislature clearly intended to overrule *Lisk* when it amended the statute. (Doc. 104 at 10-11).  Plaintiff, however, contends that the amendment did nothing to change the analysis and application of *Lisk*.  Two district courts in this circuit agree with Plaintiff, *Jones v. Coty*, 362 S. Supp. 3d 1182 (S.D. Ala. 2018) and *Carter v. L'Oreal*, 2017 WL 4479368 (S.D. Ala. Sept. 21, 2017).  This court now joins those two district courts in the opinion that *Lisk* remains good law and controls the outcome here.

The reason for the court's determination mirrors the other two district court decisions: the new statutory language does not give rise to a substantive right to which Rule 23 must yield simply because the Alabama legislature characterized it as such.  Nothing in the substance of the statute was changed.  The only change to the statute was the addition of the language that "[t]he limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter," Ala. Code § 8-19-10(f), as well as moving the language allowing the Attorney General or a district attorney to proceed in a representative capacity to another subpart,  Ala.

Code § 8-19-10(g).  However, "[w]hether the Alabama legislature chooses to label something a 'substantive right' is certainly not dispositive of, and perhaps not even relevant to, to the matter of whether a substantive right actually is at stake for Rules Enabling Act purposes." *Jones*, 362 F. Supp. 3d at 1199 (citing *Carter*, 2017 WL 4479368, at *3 ("Clearly, the fact that Alabama has deemed ADTPA's limitation on class actions a 'substantive limitation' does not mean that permitting Rule 23 class actions under ADTPA has affected a substantive right provided by the state.")).   Unless and until the Alabama legislature truly changes the substance of the law, *Lisk* controls and the court is bound to follow it.  *Lisk*, 792 F.3d at 1336; *see also Jones*, 362 F. Supp. 3d at 1200; *Carter*, 2017 WL 4479368, at *3. Therefore, pursuant to *Lisk*, the court must conclude that whether consumers may seek redress in one action or whether they must instead bring separate actions (or rely on the Attorney General or a district attorney to bring a representative action for them) is not a substantive right under ADPTA.  *Lisk*, 792 F.3d at 1336-37.  As such, Rule 23 applies to the ADPTA claim before this court and trumps ADPTA's ban of class actions in federal court.

### B.  Notice and Cure Provisions of ADTPA

As a separate and alternative argument, Hobby Lobby argues that "[a]llowing this case to proceed as a class action would eviscerate the 'notice and

cure' provisions of . . . ADPTA." (Doc. 19 at 17). In pertinent part, ADPTA

requires the following before an individual may file suit:

> At least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the clamant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the United States mail or otherwise. Any person receiving such a demand for relief who, within 15 days of the delivering of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning this rejection. If the court finds that the relief tendered was sufficient to compensate the petitioner for his or her actual damages, the court shall not award any additional damages or attorney's fees or costs to the petitioner.

Ala. Code § 8-19-10(e). Hobby Lobby does not dispute that the letter sent by

counsel for Browning and Phillips to Hobby Lobby complies with the above

requirements. (*See* Doc. 108-1 at 2-3). Hobby Lobby insists, however, that the

letter, which admittedly states their request was "on behalf of themselves, and also

on behalf of all Hobby Lobby customers in the United States between April 2,

2015, and the present" cannot suffice under ADPTA. (Doc. 108 at 24-25).

Generally, a named plaintiff in a class action can satisfy any preconditions to

suit on behalf of an entire class. *See generally* Newberg on Class Actions § 5:15

(2002). The court has already determined that based on the binding precedent of

*Lisk*, Rule 23 trumps the representative prohibition in ADPTA for claims brought

in federal court. As such, it naturally follows that any potential class members

14

may rely on the pre-suit demand letter sent by counsel for Browning and Phillips "on behalf of all Hobby Lobby customers" to satisfy the requirements of Alabama Code § 8-19-10(e).  *See Schorr v. Countrywide Home Loans, Inc*., 697 S.E.2d 827, 827 (2010) (answering in the affirmative the certified question of district court whether named plaintiffs in a class action may satisfy statutory pre-suit written demand requirement for liquidated damages on behalf of putative class action members, and finding no reason not to apply in this case the general rule allowing the named plaintiffs in a class action to satisfy preconditions for suit on behalf of the entire class under Georgia law); *see also Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) (finding that pre-suit notice requirement in Georgia Fair Business Practices Act, O.C.G.A. § 10–1–399(b) "do[es] not appear to require pre-suit notice by individual plaintiffs."). To conclude otherwise would render the *Lisk* decision meaningless[7] as it would be virtually impossible to identify the class members before filing an action.   While the court may be sympathetic to the arguments made by Hobby Lobby, its hands are tied.  *Lisk* remains good law and the court must follow the binding precedent of the Eleventh Circuit.

---

[7] The court acknowledges that *Lisk* did not address the notice and cure provisions of ADPTA. That being said, the conclusion reached by the court naturally follows from the rational of *Lisk*.

## III.  CONCLUSION

For these reasons, the motion to deny class certification and strike the class

allegations is **DENIED**.  (Doc. 103).

**DATED** this 30th day of September, 2019.

_____

**JOHN E. OTT**
Chief United States Magistrate Judge