FILED

2021 Aug-20  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID PHILLIPS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:  2:16-cv-00837-JHE |
| | ) | |
| HOBBY LOBBY STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

The undersigned preliminarily approved the settlement in this class action between Plaintiff

Robin Browning ("Browning"), as the Executor of the Estate of Diane Browning, and on behalf

of her class, and Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby").  (Doc. 156).  Under the

terms of the preliminary approval order, notice was given to all members of the class.  Plaintiff

has now filed an unopposed motion for final approval of that settlement, along with a petition for

attorney fees.  (Docs. 157).[2]  Hobby Lobby has filed a brief in support of that motion.  (*Phillips*,

doc. 159; *Marcrum*, doc. 93).  As required by Federal Rule of Civil Procedure 23(e)(2), the

undersigned held a fairness hearing on August 5, 2021.  Following the hearing, and after

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 16).

[2] This case has been consolidated with *Marcrum v. Hobby Lobby Stores, Inc.*, Case No. 2:18-cv-01645-JHE ("*Marcrum*")).  Because the issues in these cases entirely overlap, and because the facts are almost identical in both cases, the plaintiffs in both this case and *Marcrum* filed a single, consolidated motion requesting relief in both cases. The undersigned will enter separate orders approving each settlement and petition for fees and expenses, and a separate final judgment in each case.

considering the parties' arguments and the record as a whole, the motion is **GRANTED IN PART**
and **DENIED WITHOUT PREJUDICE IN PART**.

## I. Background

This case is a putative class action concerning the way Hobby Lobby administered coupon
discounts. Specifically, the remaining class claims relate to the way Hobby Lobby applied a
weekly 40% off coupon to the marked prices on furniture it sells, which Browning contends
violates the Alabama Deceptive Trade Practices Act ("ADTPA").

## II. Jurisdiction

The court has jurisdiction over the subject matter of this action and personal jurisdiction
over Plaintiff and Hobby Lobby (the "Parties"). Venue is also proper in this District pursuant to
28 U.S.C. § 1391.

## III. Class Certification

Under Fed. R. Civ. P. 23, the undersigned certifies, for settlement purposes, the following
Settlement Class:

> All persons or entities who purchased furniture at a Hobby Lobby store in Alabama
> between the dates of May 19, 2015 and October 2, 2017, and in connection with
> that purchase, used a Hobby Lobby 40% coupon. These persons or entities will be
> referred to as "Settlement Class Members."

> Excluded from the Settlement Class are those persons or entities (a) who had claims
> pending against Hobby Lobby before either a federal or state court as of the date of
> Preliminary Approval, where those claims related in any way to the Hobby Lobby
> 40% coupon; (b) who previously released all claims against Hobby Lobby; (c) who
> had previously settled any claims they pursued (or could have pursued) against
> Hobby Lobby, where the suits or claims were independent and unconnected to any
> Settlement Agreement reached in this case; or (d) who are Hobby Lobby agents or
> employees, or are family members of Hobby Lobby agents or employees, or who
> are otherwise affiliated with Hobby Lobby.

2

As set out in the preliminary approval order, (doc. 156 at 4-5), the undersigned also finds, for settlement purposes, that the requirements of Fed. R. Civ. P. 23(a) have been satisfied as to the Settlement Class: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the claims of the Class Representative, identified above and appointed below, are typical of the claims of the Settlement Class; and (d) the Class Representative will fairly and adequately protect the interests of the Settlement Class.  Further, the undersigned finds for the purposes of settlement that the prerequisites to class certification under Rule 23(b)(3) are satisfied because questions of law and fact common to all members of the Settlement Class predominate over questions affecting only individual members of the Class, and certification of the Settlement Class is superior to other available methods for fair and efficient resolution of this controversy. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1268-69 (11th Cir. 2004).

## IV. Class Representative and Class Counsel

The undersigned appoints Browning as the Settlement Class Representative. The undersigned further appoints the firms of Wiggins Childs Pantazis Fisher & Goldfarb, LLC, the Armstrong Law Center, LLC, and the Cartwright Law Center, LLC, as Class Counsel.

## V. Notice and Opt-Outs

The undersigned finds that the Settlement Administrator, JND Legal Administration ("JND"), has complied with the Notice Program set forth in the settlement agreement and with Fed. R. Civ. P. 23(c)(2)(B) in providing notice to class members, which was the best practicable

notice under the circumstances.[3]  The undersigned further finds that the short- and long-form notices previously approved provided class members with the information reasonably necessary to make an informed decision whether to remain a class member, object to the settlement, or opt out.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985); FED. R. CIV. P. 23(c)(2).

The undersigned also finds that Hobby Lobby properly and timely notified the appropriate state and federal officials of the Settlement Agreement under the Class Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. § 1715.  Accordingly, Hobby Lobby's amended motion for a finding that CAFA's notice requirements have been satisfied, (doc. 158), is **GRANTED**.

No class member has filed a request for exclusion.  Therefore, this Memorandum Opinion and Order and the accompanying judgment are binding on all members of the Settlement Class..

## VI. Final Settlement Approval

### A. Fairness of Settlement Under Rule 23(e)(2)

Under the Settlement Agreement, Hobby Lobby has agreed to pay $14.00 in cash to members of the Settlement Class.  Further, Hobby Lobby will provide a $25.00 gift card to

---

[3] As the parties have explained, it would be extremely difficult to identify specific class members because Hobby Lobby does not retain records that would provide contact information for furniture purchases.  (Doc. 157 at 25-26).  As set out in the Declaration of Jennifer M. Keough (JND's CEO), JND arranged for publication of the short form notice of the settlement in newspapers in Alabama and Florida.  (Doc. 159-1 at 3).  Each newspaper published the short form notice three times between May 7, 2021, and May 26, 2021.  (*Id.*).  The undersigned finds notice by publication was proper in this case.  *See Poertnor v. Gillette*, 618 F. App'x 624, 629-30 (11th Cir. 2015) (approving notice by publication where no records to identify purchasers exist).  JND also established a settlement website that provides pertinent information about the settlement and allows visitors to submit claims.  (*Id.*).  Finally, JND has set up a toll-free telephone number to provide information to potential class members.  (*Id.* at 4).  In addition to the steps taken by JND, Hobby Lobby published the short-form notice on its website and in its Alabama stores.  (*See* doc. 159-2 at ¶ 4).

4

Alabama Settlement Class Members, which functions essentially as cash at a Hobby Lobby store and which is fully transferrable to any other person.

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).[4] However, the court must approve a class action settlement. *Id.* (citing FED. R. CIV. P. 23(e)). Under Fed. R. Civ. P. 23(e)(2), the court "may approve [a settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . and (D) the proposal treats class members equitably relative to each other."    A district court reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *See Miller* v. *Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428-29 (5th Cir. 1977) (citations omitted).

As for the first Rule 23(e)(2) requirement, the undersigned finds that the Class Representative and Class Counsel have both adequately represented the class through years of vigorously contested litigation and a lengthy mediation process with mediator James Pratt, prolonged even further by the COVID-19 pandemic. Further, the undersigned finds the settlement process and the litigation history demonstrates that the settlement was negotiated at arm's length and without collusion or any other improper activity, and that nothing in the record contradicts this

---

[4] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

5

finding.  *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (noting there is a "presumption of good faith in the negotiation process").  The fourth Rule 23(e)(2) criterion is also satisfied; the undersigned finds that each Settlement Class Member is treated equitably relative to all other members of the Settlement Class because each is entitled to the same relief.

In addition to the Rule 23(e)(2) requirements, the Eleventh Circuit has set out a list of factors the court should consider in determining whether a settlement is fair and adequate: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  Many of these bear on the third Rule 23(e)(2) requirement.[5] As discussed further below, the undersigned finds each of these factors favors settlement approval.

**1. Likelihood of Success at Trial**

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005).  In considering this factor, the court "should not reach any ultimate conclusions with respect to the issues of fact or law involved in the case." *Knight v. Alabama*, 469 F. Supp. 2d 1016,

---

[5] At the time the Eleventh Circuit decided *Bennett*, Rule 23(e) did "not provide any standards for" settlement approval, simply requiring "approval of the court." *Bennett*, 737 F.2d at 986.  Subsequently, Rule 23 was amended to provide the criteria that currently appear under Rule 23(e)(2).  *See* FED. R. CIV. P. 23, advisory committee's note to 2003 amendment.

1033 (N.D. Ala. 2006).  Instead, this factor supports approval if there is "no guarantee that the plaintiffs would prevail at trial on their . . . claims."  *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014).

Here, as explained by both parties in their briefs, there is no guarantee that Plaintiff or the class would succeed on their claims.  (*See* doc. 157 at 36-38; doc. 159 at 12-32).  Specifically, the plaintiffs would face the hurdles of (1) obtaining class certification, which would require them to demonstrate on a classwide basis the deceptiveness of the coupon and that they caused injuries to the classes; (2) proving their case at trial, whether or not the class was certified; and (3) potential issues on appeal, even if they succeeded at trial.[6]  Success at each of these points was by no means certain.  Accordingly, this factor weighs in favor of approval.

### 2. Range of Possible Recovery and Point On or Below the Range of Possible Recovery at Which the Settlement is Fair, Adequate, and Reasonable

The second and third factors are "easily combined and normally considered in concert." *Camp*, 2014 WL 1764919, at *3.  "In considering the question of possible recovery, the focus is on the possible recovery at trial." *Lipuma*, 406 F. Supp. 2d at 1323.

Each Settlement Class Member will receive a $14.00 cash payment and a $25.00 gift card, as stated above.  Under Alabama law, a successful Alabama plaintiff would be entitled to "[a]ny actual damages sustained by such consumer or person, or the sum of $100.00, whichever is greater." ALA. CODE § 8-19-10(b).  There are no potential Alabama claims in excess of $100.00 in the settlement documents provided by Hobby Lobby, so each class member who successfully

---

[6] For example, Hobby Lobby argues Alabama Code § 8-19-10(f) bars private-party class actions, and that Judge Ott erred by finding it does not apply in federal court.  (Doc. 159 at 21-22).

litigated a claim would be entitled to $100.00.  Thus, each Settlement Class Member would receive 39% of the value of a successful claim.

The settlement amount in this case is within the range of possible recovery for class members: $0.00 if class certification is denied or if plaintiffs are unsuccessful at trial to $100.00 for a successful litigant.  Further, this recovery is well above the point in that range that courts have generally found to be fair and adequate.  *See Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 WL 13629647, at *3 (N.D. Ala. Feb. 5, 2015) (approving 13% and 20% recoveries, and collecting cases approving recoveries as low as 5.5%).  The undersigned finds the settlement amount in this case is at a point within the range of possible recovery that is fair, adequate, and reasonable, and thus that both the second and third *Bennett* factors weigh in favor of approval.

### 3. Complexity, Expense, and Duration of Litigation

A settlement that "will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F. Supp. 2d at 1324.

Here, the settlement will eliminate the need for class certification, additional discovery, trial, and a potential appeal.  Since this case is consolidated with *Marcrum*, there are also potentially complicated trial management issues.  For example, class certification might be appropriate in one case but not in the other, or some issues might be tried together and some separately, potentially resulting in jury trials before two different juries.  In short, continuing forward with this case would be complicated, expensive, and lengthy, with recovery unassured at the end.  The undersigned finds this factor weighs in favor of settlement approval.

8

### 4. Opposition to Settlement

"In determining whether a proposed settlement is fair, reasonable, and adequate, the reaction of the class is an important factor." *Lipuma*, 406 F. Supp. 2d at 1324 (internal citation omitted).  As noted above, no class member opted out of the settlement, and no class member has objected to the settlement either.  Nor has any government entity notified under CAFA objected or sought to participate in the settlement.  (*See* doc. 158).  This lack of opposition "points to the reasonableness of [the] proposed settlement and supports its approval."  *Lipuma*, 406 F. Supp. 2d at 1324.  Accordingly, this factor weighs in favor of approval.

### 5. Stage of the Proceedings

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma,* 406 F. Supp. 2d at 1324 (citation omitted).

Here, as the docket reflects, this case has been hotly contested for years.  This case has involved voluminous motion practice, including motions for summary judgment, and discovery involving numerous depositions.  (*See* doc. 157 at 3-8).  Given this, the undersigned is satisfied that the plaintiffs were able to evaluate the desirability of the settlement versus continuing with litigation, and thus the undersigned finds this factor supports settlement approval.

9

**B. Fees, Costs, and Class Representative Awards**

Class Counsel requests $425,000.00 in fees, expenses, and potential class representative awards.[7]  They note this was negotiated separately, after class relief.  (Doc. 157 at 40-41).  According to Class Counsel, the expenses in this case are, to date, $101,538.21.  (*Id.*).  That leaves $323,461.79 for an attorneys' fee award and an incentive payment to the class representatives, if approved.[8]  (*Id.* at 41).

**1. Class Representative Incentive Award**

It is something of an open question in this circuit whether incentive awards are available.  A divided panel of the Eleventh Circuit recently held that such awards are prohibited.  *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020).  However, an Eleventh Circuit judge has withheld the mandate, and the plaintiff has sought *en banc* review.  In this posture, the Eleventh Circuit's decision is not final.  *See Sabal Trail Transmission, LLC v. Lasseter*, 823 F. App'x 914, 918 (11th Cir. 2020) (quoting *Flagship Marine Svcs., Inc. v. Belcher Towing Co.*, 23 F.3d 341, 342 (11th Cir. 1994) ("Until a mandate issues, an appellate judgment is not final; the decision reached in the opinion may be revised by the panel, or reconsidered by the *en banc* court, or certiorari may be granted by the Supreme Court.").  As Plaintiff notes, the current best practice

---

[7]  The undersigned is aware that because these two cases were consolidated, and because the factual and legal issues overlap, the parties negotiated the settlement of this case and *Marcrum* together.  The undersigned also is aware that because of the similarity of the cases and the fact that they have been consolidated, it would be difficult, if not impossible, to truly allocate time and expenses between the cases.  The parties have agreed to the payment of $425,000.00, which covers all expenses, attorneys' fees, and any incentive award for both cases.  For the sake of convenience, and pursuant to the parties' agreement, the undersigned allocates $225,000.00 of that amount to this case, and $200,000.00 to the *Marcrum* case, dealt with separately in the Final Approval Order in that case.

[8]  The proposed class representative incentive awards are $3,000.00 for Browning and $5,000.00 for the *Marcrum* plaintiff.

appears to be to approve the settlement except for the incentive award, but retain jurisdiction to allow Plaintiff to renew the request if *NPAS Sols.* is reversed. (*See* doc. 157 at 51-52). *See also Fruitstone v. Spartan Race, Inc.*, No. 20-cv-20836, 2021 WL 2012362, at *13 (S.D. Fla. May 20, 2021) (carving out incentive award issue); *Janicijevic v. Classic Cruise Operator, Ltd.*, No. 20-cv-23223, 2021 U.S. Dist. Lexis 95561, at *27-28 (S.D. Fla. May 19, 2021) (same); *In re Equifax Inc. Customer Data Security Breach Litigation*, 999 F.3d 1247, 1281-82 (11th Cir. 2021) (affirming settlement as to everything but incentive award and remanding with instructions to vacate incentive award and otherwise leave settlement intact).

At the fairness hearing, the undersigned confirmed that Hobby Lobby has no opposition to carving out the issue of a class representative award.  Accordingly, the request for incentive awards is **DENIED WITHOUT PREJUDICE**.  The undersigned will retain jurisdiction over this matter until the ultimate disposition of *NPAS Sols.* is known, either through a final decision of the Eleventh Circuit or a final decision of the United States Supreme Court.  If *NPAS Sols.* is reversed after that final decision, Plaintiff may file a motion renewing her request for approval of class representative awards.[9]

## 2. Attorney Fees and Costs

There are two justifications for a fee in class action cases: a percentage of the common fund approach, adopted for the 11th Circuit in *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); and because the ADTPA provides for attorney fees for successful litigants, an hourly rate, or lodestar calculation, "based upon the product of reasonable hours spent on the

---

[9] At the fairness hearing, Plaintiff's counsel informed the undersigned that the potential class representative award will be held in trust pending the ultimate outcome of *NPAS Sols*.

case and a reasonable hourly rate." *Northwester Eng'rs Fed. Credit Union v. Home Depot, Inc.*, 931 F.3d 1063, 1076 (11th Cir. 2019) ("Courts calculate attorney's fees using two methods: the percentage method or the lodestar method.").  Here, the undersigned finds the requested attorney fee is reasonable under either calculation.[10]

As a preliminary matter, the undersigned notes that the parties negotiated the issue of attorney fees and expenses at arm's length and after resolving the issue of relief for the class.  The Settlement Agreement, moreover, is not conditioned on whether Class Counsel is awarded the amount they requested.  (Doc. 150-1 at 36, ¶ 25.02).  All of this indicates there was no collusion or self-dealing that would call into question the petition for an award of fees and expenses.  *See* FED. R. CIV. P. 23(e)(2)(B), advisory committee's note to 2018 amendment; *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (approving fee award "that was negotiated separately from the rest of the settlement, and only after substantial components of the Class Settlement had been resolved").

### a.  Common Fund Calculation

In this circuit, common-fund fee awards are properly calculated as a percentage of benefits made available to the class, regardless of whether each class member redeems the benefits made available to class members, or even whether unclaimed benefits revert to the defendant. *See e.g., Waters*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund, even though a portion reverted to the defendant); *Masters v. Wilhelmina Model Agency, Inc.*,473 F.3d 423, 200 (2d Cir. 2007) (holding that in determining counsel fees,

---

[10] Hobby Lobby disputes that there is a common fund in this case, but agrees the requested fee is reasonable under the lodestar calculation.

trial court erred in calculating percentage of the fund on the basis of claims made against the fund rather than on the entire fund created by efforts of counsel).  Under *Camden I*, the "benchmark" reasonable percentage of the common fund is 25%, in the center of the 20-30% "benchmark" range.  *See, e.g., In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts typically award between 20-30%, known as the benchmark range.").

      If a common fund exists, the benefit to the class typically is deemed to include the expenses of litigation, as well as the costs of administrating the settlement.  "Whether the cash portion of the settlement is used to pay attorneys or to distribute certificates to class members, the expenditures of the fund inure to the benefit of the class.  Accordingly, the calculation of the value of the common fund should include all cash used to pay attorneys' fees and the expenses of claims administration."  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993). *See also Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 335-36 (E.D. Pa. 2007) ("Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund" including settlement administration) (citation omitted).

      Assuming without deciding that a common fund has been created, according to Plaintiff those funds are substantial. Plaintiff points to evidence indicating that the 1/184th data slice of the class period for this case revealed 159 Alabama class members.  From this Plaintiff extrapolates a total of approximately 28,256 class members.  At the agreed upon $39.00 per claim, using the common fund method would yield $1,140,984.00.[11]  If one half of Plaintiff's litigation expenses

---

[11] The total aggregate settlement funds created for both cases would be approximately $1,783,920, according to Class Counsel.

are allocated to this case, then the total fund created would be approximately $1,191,753.00. The fee portion requested for this case is approximately $174,231.00, less than 15% of that total fund. This is well below the benchmark range.

### b. *Johnson* Factors

A further consideration is whether the fee meets the factors first articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). These factors are:

> (1) the time and labor required: (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242-43 (11th Cir. 2011). The undersigned assesses the factors most relevant here.[12]

### i. Time and Labor Required and Preclusion of Other Employment

The litigation of this case was time and labor intensive. Over 800 hours were expended in litigating the many issues presented in this case. Even based upon a lodestar calculation, the time expended justifies the fee in this case. Similarly, Class Counsel litigated this case at a high level to the exclusion of other work that could have been performed.

### ii. Difficulty of Issues and Skill Required.

Great skill was required to oppose well-funded, highly-skilled defense counsel in a class action concerning a technical subject matter. For example, Class Counsel had to navigate the

---

[12] Not all of these factors are relevant in every case. *See Camden I*, 946 F.2d at 772.

potentially class-killing issue of whether, pursuant to *Lisk*, *supra*, this case could even proceed as a class action. This was difficult work, performed at high level, and it justifies a fee in keeping with *Johnson*.

### iii. The Fee is Customary for Contingent Class Actions by Attorneys of the Reputation of Class Counsel.

A contingent fee for a successful class action lawyer is approximately 25% in a common fund case. Here, in this case, the fee is approximately 15%. Even when lodestar method is used, *see infra*, the fee is proper. Class Counsel submitted the Declaration of Tucker Brown, who has practiced in the area of class actions for years. (Doc. 157-5). His opinion is that the fees requested are reasonable, and in line with what similarly situated counsel in the community command. (*Id.*)

### iv. The Result Was Timely and Reasonable.

The maximum total damages available for most individual claimants in this case would be $100.00. An individual recovery would not support the time and expense of this case. Few, if any, practitioners would represent an individual plaintiff on a contingency fee arrangement in a case like this, where substantial risk of loss exists. As such, the fee requested is reasonable and is lower than most individual contingent-fee agreements.

### c. Lodestar

The ADTPA contains a fee-shifting provision for successful litigants. The Act states that in a successful action, a litigant shall be awarded "the costs of the action or counter-claim, together with a reasonable attorney's fee." ALA. CODE § 8-19-10(a)(3).

Here, attorney Brian Clark spent over 770 hours on both cases, and the Wiggins, Childs firm spent over 850 hours on both cases. (Doc. 157-5 at 3, ¶ 5). A rate of $550.00 per hour for Mr. Clark's time is reasonable in this case. Mr. Clark has been practicing law in Alabama for

thirty years, and has handled many complex, document-intensive cases including class actions. Mr. Clark previously had a class settlement approved in this District in which his time was calculated at $600.00 per hour. *See Parsons*, 2015 WL 13629647. The undersigned finds Mr. Clark's rate of $550.00 per hour in this case is justified. Mr. Clark's portion of the Wiggins, Childs lodestar is 785 hours, to date, which computes to $431,750.00, is far in excess of the $323,441.69 requested in fees for both cases. In addition, Darrell Cartwright expended 126.2 hours in this case at $425.00, per hour, for a total of $53,635.00. (Doc. 157-6). The total lodestar in the cases is $415,385.00. This far exceeds the $323,441.69 ($425,000.00 less expenses) requested for both cases.

Accordingly, the undersigned approves the $225,000.00 payment to Class Counsel for attorney fees and expenses in this case.

### C. Approval of Proposed New Coupon

As part of the Settlement, the parties agreed that Hobby Lobby could submit for judicial approval a proposed new coupon with revised terms. (Doc. 150-1 at 27, ¶ 15.03; doc. 151-1 at 27, ¶ 15.03.) The terms of the proposed new coupon are attached as Exhibit "G" to both Settlement Agreements. (Doc. 150-1 at 90; doc. 151-1 at 90.). Plaintiff takes no position as to whether the revised coupon should be approved.

The previous version of Hobby Lobby's discount coupon provided that the 40% off reduction was "good for one item at regular price only." (*See* Ex. "C" to Settlement Agreements). Even though the coupon also declared in plain terms that it could not be used with any other "discount," Plaintiffs in both cases asserted that the 40% off coupon should apply to the lower "orange tag price" on furniture, not the higher "green tag price." Plaintiffs took this position, claiming that the "orange tag price" was the "regular price" referred to in the coupon. Hobby

Lobby, on the other hand, asserted that the "orange tag price" was a "discount price," which meant that the coupon by its express terms would not apply to that price.

The proposed new coupon resolves this difference in interpretation.  It eliminates any reference to a regular price and states that the "[c]oupon will reduce the highest item price by 40%."  (Doc. 150-1 at 90; doc. 151-1 at 90).  It also retains the limitation that the coupon cannot be used with any "discounted price" or with items marked with a yellow "Your Price Sticker" ("Your Price" stickers are placed on furniture.)  *Id.*  With this revision, no one could plausibly claim that the 40% coupon could be used with the "orange tag price" on furniture, since the "green tag" price is the highest item price tag placed on furniture.  The undersigned therefore approves the terms of the proposed new coupon.

## VII. Conclusion

For the reasons stated above, Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Petition for Award of Fees and Expenses, (doc. 157), is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.  The court will retain jurisdiction over this case as stated above.  A separate order will be entered.

DONE this 20th day of August, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE